### BUFFALO SPECIALTY CO. v. INDIANA RUBBER & INSULATED WIRE CO.

(Circuit Court of Appeals, Seventh Circuit. April 18, 1916.)

#### No. 2249.

PATENTS ⚙═202(1)—LICENSES—CONSTRUCTION.

Complainant was the assignee of a patent for a pneumatic tire provided within its air-chamber with a free semi-liquid substance adapted to coagulate when exposed to the external atmosphere and thus seal any punctures, and was manufacturing and selling such fluid substance which was known as "dope." Defendant, the original owner of the patent, assigned it, taking back at that time a shop license under the letters patent, with privilege to manufacture said material or materials in its factory, but covenanting not to manufacture for sale or sell or offer for sale any of the materials except in a local retail way from its factories. *Held*, that the shop license authorized defendant to manufacture in unlimited quantities tires with the patented device, the only restriction being upon the sale of the dope; this being particularly true in view of the fact that there had been a long acquiescence in defendant's manufacture of tires.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 281–288; Dec. Dig. ⚙═202(1).]

Appeal from the District Court of the United States for the District of Indiana.

Suit by the Buffalo Specialty Company against the Indiana Rubber & Insulated Wire Company. From a decree for defendant, complainant appeals. Affirmed.

Appellant brought this suit against the appellee to restrain infringement of all the claims of patent No. 578,551, granted to C. E. Duryea March 9, 1897, for improvements in vehicle tires.

The device of the patent consisted in a pneumatic tube or bicycle tire treated internally with a semi-liquid compound which, when a puncture occurs, is forced by the action of the compressed air within the tube into the wound or aperture and which, as it becomes exposed to the air, congeals or hardens and thus repairs the leak. The fluid is hereinafter termed "dope." It is not patented and may, the patentee says, consist of any "liquid or semi-liquid which will retain its free-flowing characteristics while contained within the tube, but which will preferably harden or become more dense when exposed to the outer atmosphere." Liquid glue, or thick mucilage combined with glycerine, and fine powder, such as flour, reduced to paste, are named. Claim 5 reads as follows: "A pneumatic tire provided within its air-chamber with a free semi-liquid substance adapted to coagulate when exposed to the external atmosphere to seal a puncture or vent in the tire, substantially as described" —and fairly describes the invention.

Infringement is based upon the following facts: Appellant was and is engaged in the business of manufacturing and selling dope. Defendant was and is engaged in the business of making and selling pneumatic bicycle tires. The

latter, being on November 5, 1898, the owner of the patent in suit, sold and conveyed it to appellant's predecessor in title, the Buffalo Speciality Manufacturing Company, and took back, as a part of the transaction, what was in the transfer agreement termed "a shop license under said letters patent," in the following language, viz.: "That the said party of the second part is hereby granted a shop license under said letters patent with the privilege to manufacture and use said material or materials in its factory and also in the factory of the Peoria Rubber & Manufacturing Company of Peoria, Illinois, but said party hereby covenants and agrees not to manufacture for sale, sell nor offer for sale in anywise any of said materials, and also that the said Peoria Rubber & Manufacturing Company likewise will not manufacture for sale, sell nor offer for sale the same, during the continuance of this contract, except in a local retail way from the factories of each of said the Indiana Rubber & Insulated Wire Company and said Peoria Rubber & Manufacturing Company respectively."

Appellee thereupon proceeded to manufacture the doped wheel at its said two factories, gradually increasing its output until, at the time this suit was begun, it had built up a trade of immense proportions, practically all with the Chicago house of Sears, Roebuck & Co. This was in March, 1911, or more than 11 years after appellant's predecessor obtained the title. Appellant acquired title to the patent on July 1, 1905, the owners of the appellant corporation being practically the same as those of its predecessor.

It is appellant's contention that it had no knowledge of the action of appellee in building up said large trade until about the time of suit; that such action was in violation of said shop agreement, the true intent of which, it claims, was that appellee should make and use or make and sell said invention only in a local retail way from the factories of said two plants of appellee.

At the time this suit was begun appellant also began 'a suit in an Indiana state court for reformation of said contract of shop license, so that the same should express in clear terms the meaning which it is herein sought to place thereon; also for injunctive relief and for damages. In the third paragraph of the complaint filed in this latter suit, appellant herein describes the shop license clause as follows, viz.: "That on the 5th day of November, 1898, and at the time of the sale, assignment, and transfer by the defendant of all of its interest in said letters patent, the defendant negotiated with said Buffalo Specialty Manufacturing Company for a shop right or license to manufacture and sell said dope in a local retail way only, and that, for valuable consideration moving between the parties thereto," etc.—reciting the said above set out clause of said shop-license contract. No complaint is made of the sale of dope as such, but only of its sale as an element of the tire of the patent.

Such further action was had as to said state court suit as that the court dismissed the bill at appellant's cost for want of equity, a decision which, it appears, was afterwards affirmed on appeal. This decision is pleaded herein as res adjudicata.

Appellant's claim of infringement is based upon the proposition that appellee, having breached the license contract by making and selling the device of the patent in quantities, became an infringer. The District Court sustained both noninfringement and the plea of former adjudication, and dismissed the bill for want of equity, which action is assigned for error.

Albert H. Graves and Charles K. Offield, both of Chicago, Ill., for appellant.

W. H. Thompson, of Indianapolis, Ind., for appellee.

Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). We are at a loss to understand how any confusion could have arisen as to the construction of the contract for a shop license. Such a license is as good and effective to vest a right in a grantee as any other, to the extent of its terms, no matter what it is called. By that instrument

appellee was granted a "license under said letters patent." That language, by all fair interpretation, means that it was given a right, power, or authority to manufacture and market the tire of the patent (Robinson on Patents, vol. 2, § 812, p. 590; Walker on Patent Law [4th Ed.] §§ 296, 297, p. 259; 30 Cyc. p. 956, cl. 11, n. 83) without limit as to time (30 Cyc. p. 957, cl. c., n. 97). It was also given the privilege to *manufacture* and *use* the materials named in the patent for the purpose of making said tire at its two factories in unlimited quantities, if desired. It, however, covenanted "not to manufacture *for sale, sell* nor *offer for sale* the same," meaning the dope, during the life of the contract, except in a local retail way from the factories, etc. The manufacture and sale of dope was the special feature of appellant's business, and the manufacture and sale of it by appellee would necessarily have interfered with that business. That the terms "material" and "materials" referred to the dope appears from the third paragraph of appellant's complaint in the Indiana state court. It also appears from the language of the clause in controversy—the use of the term "manufacture and use" in the clause reading, "with the privilege to manufacture and use said material or materials" in its two factories, and the use of the terms "manufacture for sale, sell nor offer for sale," when referring to the dope. It also is the natural construction to be placed upon the words "material" or "materials" as employed in the contract.

We are clear that there is in the contract no attempt to limit appellee in the right to make the tire of the patent and market it, and in so doing to manufacture and use the dope to the degree it finds desirable in connection with its said two factories. The fact that such a construction was followed by appellee for so many years without objection adds strength to that conclusion. We are of the opinion that to hold otherwise would do violence to the language and the intention of the parties. The contract was not breached. Nor can infringement be predicated upon the facts of the case.

In view of the foregoing, we deem it unnecessary to consider the other defenses raised.

The decree of the District Court is affirmed.